**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SUSIE BIGGER, on behalf of herself, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:17-cv-7753 |
| v. | ) ) | Judge Harry D. Leinenweber |
| FACEBOOK, INC., | ) ) | |
| Defendant. | ) ) | |

<u>**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION AND ISSUANCE OF NOTICE UNDER 29 U.S.C. § 216(b)**</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

I.      STATEMENT OF FACTS ........................................................................................2

        A.      Facebook Subjects CSMs Nationwide to the Same Terms and Conditions
                Of Employment............................................................................................2

        B.      Facebook Does Not Pay All CSMs Overtime Compensation. ......................3

        C.      Facebook Requires CSMs to Perform the Same Job Duties..........................5

        D.      The Proposed Collective Class. ...................................................................8

II.     THE FLSA STANDARD FOR CONDITIONAL CERTIFICATION...............................8

III.    ARGUMENT ........................................................................................................11

        A.      Because Plaintiff Easily Satisfies the "Modest Factual Showing" Standard,
                Conditional Certification Should Be Granted............................................11

        B.      Given the Remedial Purpose of the FLSA, the Court Should Exercise Its
                Discretion to Notify Similarly-Situated CSMs of Their Right to Opt-In to
                This Action................................................................................................14

        C.      Plaintiff's Proposed Notice Is Fair, Adequate and Consistent With Court-
                Approved Notices in Other Similar Actions...............................................15

CONCLUSION..................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*Allen v. Marshall Field & Co.*,
   93 F.R.D. 438 (N.D. Ill. 1982) ................................................................................ 8

*Anyere v. Wells Fargo*,
   No. 09 C 2769, 2010 WL 1542180 (N.D. Ill. Apr. 12, 2010) ................................. 16

*Boltinghouse v. Abbott Labs., Inc.*,
   No. 15 CV 6223, 2016 WL 3940096 (N.D. Ill. July 20, 2016) ......................... 10, 16

*Boyington v. Percheron Field Servs., LLC*,
   No. 14-CV-90, 2015 WL 3756330 (W.D. Pa. June 16, 2015) ................................ 13

*Corning Glass Works v. Brennan*,
   417 U.S. 188 (1974) ................................................................................................ 1

*Flores v. Lifeway Foods, Inc.*,
   289 F. Supp. 2d 1042 (N.D. Ill. 2003) ................................................................... 9

*Girolamo v. Cmty. Physical Therapy & Assocs.*,
   No. 15 C 2361, 2016 WL 3693426 (N.D. Ill. July 12, 2016) ............................ 9, 10

*Harhash v. Infinity West Shoes, Inc.*,
   No. 10 Civ. 8285(DAB), 2011 WL 4001072 (S.D.N.Y. Aug. 25, 2011) ............... 16

*Harkins v. Riverboat Servs., Inc.*,
   No. 99 C 123, 2002 WL 32406581 (N.D. Ill. May 17, 2002) ................................. 9

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) ....................................................................... 14

*Hoffmann-La Roche v. Sperling*,
   493 U.S. 165 (1989) ................................................................... 9, 10, 14, 15

*Hudgins v. Total Quality Logistics, LLC*,
   No. 16 C 7331, 2016 WL 7426135 (N.D. Ill. Dec. 23, 2016) ......................... 11, 15

*Jirak v. Abbott Labs.*,
   566 F. Supp. 2d 845 (N.D. Ill. 2008) ................................................................... 10

*Johnson v. ECT Contracting LLC*,
   No. 09-cv-0130, 2010 WL 625390 (M.D. Tenn. Feb. 18, 2010) ........................... 13

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    563 U.S. 1 (2011) ............................................................................................... 14

*Larsen v. Clearchoice Mobility*,
    No. 11 C 1701, 2011 WL 3047484 (N.D. Ill. July 25, 2011) ............................... 11

*Mitchell v. Robert DeMario Jewelry, Inc.*,
    361 U.S. 288 (1960) ........................................................................................... 14

*Molina v. First Line Solutions LLC*,
    566 F. Supp. 2d 770 (N.D. Ill. 2007) ..................................................... 10, 12, 13

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ............................................................................... 11

*Nehmelman v. Penn Nat. Gaming, Inc.*,
    822 F. Supp. 2d 745 (N.D. Ill. 2011) ................................................................... 8

*Olmsted v. Residential Plus Mtg. Corp.*,
    Civ. Nos. 08-142, 08-419, 2008 WL 5157973 (N.D. Ill. Dec. 9, 2008) ................. 13

*Prospect Med. Holdings, Inc.*,
    No. CV 17-3599, 2018 WL 5452746 (E.D. Pa. Oct. 26, 2018) ............................. 8

*Salmans v. Byron Udell & Assocs., Inc.*,
    No. 12-3452, 2013 WL 707992 (N.D. Ill. Feb. 26, 2013) .................................... 13

*Schaefer v. M & T Bank Corp.*,
    122 F. Supp. 3d 189 (S.D.N.Y. 2015) ................................................................. 12

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    599 F.3d 626 (7th Cir. 2010) ............................................................................... 1

*Slaughter v. Caidan Mgmt. Co., LLC*,
    317 F. Supp. 3d 981 (N.D. Ill. 2018) .................................................. 10, 13, 15, 16

*Tamas v. Family Video Movie Club*, Inc.,
    No. 11 C 1024, 2013 WL 4080649 (N.D. Ill. Aug. 13, 2013) .............................. 13

*Woods v. New York Life Ins.*,
    686 F.2d 578 (7th Cir. 1982) ................................................................................ 9

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ..............................................Passim

Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* ...................................................................... 1

## INTRODUCTION

Plaintiff Susie Bigger ("Plaintiff") was employed by Defendant Facebook, Inc. ("Defendant" or "Facebook") as a Client Solutions Manager ("CSM"), a position that assists advertising clients and other Facebook team members in carrying out advertising campaigns. Although Facebook uses arcane corporate jargon to boost the perception of the CSMs' "strategic" role in the organization (*e.g.*, CSMs do not "sell ads," they "grow the client's business" to "achieve business results"), in actuality these employees are called on to perform ever-increasing job tasks that involve everything from data entry, to upselling Facebook ads, to troubleshooting bugs, to scheduling client entertainment and ordering Facebook swag, such as hats and water bottles.

Plaintiff alleges that because she and other similarly-situated CSMs nationwide primarily performed non-exempt work, they were wrongfully misclassified as exempt and denied overtime pay for hours worked beyond 40 per workweek as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Because Facebook has never bothered to evaluate the propriety of CSMs' exempt classification, it cannot meet its burden to prove that any overtime exemption applies to CSMs under the FLSA. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631 (7th Cir. 2010).[1]

Plaintiff now seeks conditional certification and authorization to send Court-supervised notice of this action to similarly situated CSMs who were employed by Facebook nationwide. These employees uniformly shared the same job duties, compensation plan, and terms and conditions of employment, and were subject to Facebook's blanket misclassification as exempt. Plaintiff has attached a copy of her proposed Notice as Exhibit A. Prompt facilitation of court-

---

[1] Plaintiff further alleges that she and a class of others similarly situated in Illinois were misclassified and denied proper overtime payments in violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.* Plaintiff's state law claims are not at issue in this Motion.

approved notice is critical. Unlike a Rule 23 class action, the statute of limitations for prospective

FLSA class members is not tolled until members of the collective "opt-in" to the suit. *See* 29 U.S.C.

§ 216(b). Until notice issues, prospective class members remain unaware of this action or their

right to pursue a claim for unpaid overtime wages. In order to ensure their rights are protected,

these workers must be provided prompt notice of the pendency of this case. Otherwise, their claims

will be diminished or barred outright by the passage of time.

Consistent with the broad remedial purpose of the FLSA, the standard for conditional

certification is lenient and Plaintiff must only make a "modest factual showing" that she is

similarly situated to the employees to whom she seeks to send notice. Plaintiff, at this stage of

litigation, alleges more than sufficient facts to support conditional certification and readily meets

the nominal standard applicable at the first step of the two-step certification process. Thus,

conditional certification and judicial notice are warranted.

## I. STATEMENT OF FACTS

### A. Facebook Subjects CSMs Nationwide to the Same Terms and Conditions of Employment.

Defendant Facebook, Inc. ("Facebook"), is a social media company headquartered in

Menlo Park, California. (ECF No. 1 ("Compl.") ¶ 9.) Facebook's business is to provide a platform

to sell ads that reach Facebook's 2.27 billion users worldwide. (Ex. B, Rule 30(b)(6) Deposition

of Nicolle "Nikki" Hickman ("Hickman Tr.") 18:1-9; *see also https://newsroom.fb.com/company-*

*info/* (last accessed November 4, 2018).) Within its client-facing sales division, Facebook has

teams or "pods" made up of three positions: (1) outside sales representatives known as Client

Partners (2) Client Solutions Managers ("CSMs") and (3) Industry Managers. (Hickman Tr. 30:8-

14; 47:8-15; 29:22-30:7.) Industry Managers are responsible for supervising the work of the Client

Partners and CSMs. (*Id.*) While Client Partners are predominately focused on new clients and

generating new business, CSMs are responsible for upselling to existing clients, assisting other team members and performing other operational and administrative tasks set forth in detail below. (*Id.* at 88:6-10.)

Plaintiff Susie Bigger worked at Facebook's Chicago office as a CSM (and its predecessor Account Manager title) from May 2013 until March 8, 2017. (Compl. ¶ 7.) Facebook employs approximately 300 CSMs nationwide at offices in Menlo Park, Seattle, Los Angeles, Austin, Dallas, Atlanta, Chicago, Miami, New York, Detroit, and Washington D.C. (Hickman Tr. 51:6-22.) Regardless of work location, all CSMs are employed full-time and have the same compensation plan, which is comprised of approximately 75% base salary plus 25% commission based on sales quotas. (*Id.* at 51:23-52:11; 87:19-25.) All CSMs are expected to drive revenue through upselling Facebook advertising products. (*Id.* at 54:12-20.) CSMs cannot determine pricing for Facebook products, and they play no role in creating Facebook policies. (*Id.* at 55:7-20.) Clients are not required to utilize the services of a CSM; Facebook offers tools for clients to manage their advertising on Facebook without the need for CSM support. (*Id.* at 57:11-21.)

CSMs do not have offices or even their own cubicles, but instead work alongside other Facebook employees at shared tables in open workspaces. CSMs do not receive administrative or clerical support, and because they are the lowest ranked employee on their team or pod, most of the clerical and administrative work of their teams falls on them by default. (*See* Ex. C, Sept. 16, 2016 David Lawenda Email.)

**B.**     **Facebook Does Not Pay All CSMs Overtime Compensation.**

At the point of hire, Facebook assigns each CSM to an "individual contributor" ("IC") level purportedly based on their experience level. (Hickman Tr. 40:10-11.) For example, new hires from Facebook's pool of interns were assigned to IC-1 level if they do not have a Bachelor's degree and

IC-4 level if they have a Master's degree and more than two years of experience. (Ex. D, August 3, 2015 Dawn Carfora Email.) Susie Bigger was hired at an IC-4 level and remained at that level during her entire employment at Facebook. (Ex. E, Deposition of Susie Bigger ("Bigger Tr.") 100:1-7.)

IC-1 and IC-2 levels are uniformly classified as non-exempt and paid overtime, while IC-3 level and above are classified as exempt and not paid overtime. (Hickman Tr. 39:8-13.) The majority of CSMs—approximately 75%—are level IC-3 or IC-4. (*Id.* at 143:2-6.) The IC level structure has been in place at Facebook since before 2011. (*Id.* at 39:14-40:1.) ***No one at Facebook has made any effort since the CSM role was created in early 2014 to evaluate whether CSMs are properly classified as exempt at any of the levels***. (*Id.* at 41:3-15.)[2]  Moreover, Facebook has no good explanation why it classified some CSMs as non-exempt and others as exempt, even though they share the same duties.  Susie Bigger worked 60-hours per workweek on average, but due to her IC-4 level designation, was classified as exempt and was not paid overtime. (Bigger Tr. 336:5-7.)  Facebook was aware that CSMs may suffer a "pay cut" when moving from an overtime

---

[2] Rule 30(b)(6) designee and HR business partner Nikki Hickman specifically testified as follows:

"Q. … Are you aware of any efforts or analysis at Facebook that would compare the nonexempt IC Levels 1 and 2 with the ones above it for purposes of classifying CSMs as exempt or nonexempt?

A.  No, I was not involved in classification discussions.

Q. Were you aware of that happening at all since you've been at Facebook?

A. Not on nonexempt or exempt.

Q.  Are you aware of any efforts at Facebook since you've worked there to determine whether or not CSMs are properly classified as exempt or not?

A. No.

eligible IC2 level to an exempt IC3 level.  (Ex. F, Jan. 5, 2016 Mark Howard Email; Hickman Tr. 168:9-169:8.)

### C.     Facebook Requires CSMs to Perform the Same Job Duties.

"Regardless of regional org[anizational] structure, the function of a CSM role is consistent," and the role is consistent across all IC levels. (Ex. G, April 10, 2015 Global CSM Presentation at FB_BIGGER004195; Hickman Tr. 141:16-23.) All CSMs, regardless of their IC level or exemption status are required to go through the same centralized onboarding and training program. (Hickman Tr. 146:6-17.) No additional training is needed to move from one IC level to another. (*Id.* at 147:4-12.) The core job responsibilities of all CSMs at all IC levels are the same. (*Id.* at 61:15-25.)

Nevertheless, without input from a compensation team or any consideration of exemption classification, a small working group of Facebook employees, including HR business partner Nikki Hickman, and other managers, created a document called an "expectations grid" that purportedly outlines the expectations for how CSMs' autonomy and knowledge in performing their job duties should increase at higher IC levels. (*Id.* at 60:13-15; 75:8-24; 82:13-21; 83:25-84:6.) The expectations grid was created for the purpose of coaching CSMs to understand the expectations of their job, for managers to use in performance reviews, and for CSMs to consult in writing self-reviews. (*Id.* at 129:22-130:12.) It is the only document delineating differences between different CSM IC levels and is largely corporate jargon. (*Id.* at 75:5-9.)

Despite Facebook's stated expectations regarding the duties performed by CSMs, in practice it was widely acknowledged at Facebook that CSMs actually spent the majority of their time performing low-level, non-exempt, non-revenue driving "operational" or "tactical" duties, like troubleshooting bugs in client ads, answering invoicing and billing questions, and setting up

accounts. (*Id.* at 89:10-22; 133:12-134:2.) In a presentation for global sales leaders, the CSM role

was illustrated as a pyramid, showing at the base "a heavy amount of operational work like tasks,

troubleshooting, and internal account set up/infrastructure. This represents the majority of CSM

time spent." (Ex. G at FB_BIGGER004197.) The presentation went on to explain:

> One simple way to think about this …
>
> - The bottom two layers of the pyramid in blue represents executional and operational work that represents the majority of work happening today for CSMs.
>
> - The top in purple and green represent more strategic work like complex solutions selling and advanced analytics. We NEED more CSMs operating in this part of the pyramid to drive the business *and* to provide meaningful career growth.

(*Id.* (emphasis in original).) In addition, Facebook performed time studies that revealed that

"CSMs spent 70 percent of their time on tactical things and 30 percent on strategic." (Ex. H, Mar.

2, 2016 Global CSM All Hands Presentation at 17.) These time studies showed that CSMs were

spending over 2.5 hours per day on low-level tasks, like searching for information, diagnosing

customer issues, chasing billing issues, and logging customer interactions—all duties that were

not in the core function that management had outlined. (*Id.*; Hickman Tr. 67:21-68:12; 89:2-9.)

As late as September 2016, Facebook management had to address the disproportionate

amount of administrative support and client-entertainment tasks that CSMs were being asked to

perform, like meeting and event planning, client entertainment planning, ordering and distributing

Facebook-branded swag to clients, and offsite meeting planning. (Ex. C.) In an email, head of

North American sales David Lawenda specifically stated:

> As part of our effort to understand and address the problem, we have been conducting a comprehensive CSM workflow analysis. One theme that has emrged is that CSMs are spending a lot of time on admin and client entertainment type activities.

*Id.* Lawenda continued and advised CSM managers:

> While client entertainment and some level of admin is part of ALL of our jobs, what is unfortunate is that CSMs seem to be disproportionately bearing the load. In some cases CSMs are almost always delegated these tasks, being treated as admin support and expected ot fully plan and execute all of these events. … My ask: Please reinforce with your teams, especially the [Client Partners] and Industry Managers, to ensure that all of this work is not being delegated to our CSMs.

*Id.*

In fact, the constantly expanding operational duties of CSMs was an ever-present concern for Facebook management at the highest levels nationwide. (Ex. I, Deposition of Ginger "Gigi" K. Teague Melrose 51:21-25.) The topic of CSM overload and working too many hours was raised by CSMs in employee surveys and was discussed in leadership meetings. (Hickman Tr. 66:5-19; 68:17-22.) Global Functional Head of CSMs Gigi Melrose identified what Facebook internally termed as "CSM overload" as "an increasing concern in every region." (Ex. J, Oct. 8, 2015 Gigi Melrose Email at 1.) She explained, "This is recognized as a top concern, and we are working hard to address this, and to prioritize our massive scope and decrease time spent on tactical non-revenue driving operational tasks." (*Id.* at 2.) David Lawenda likewise emphasized, "the increasing demand on or CSMs has been a consistent pain point for us," leading Facebook to conduct a "comprehensive CSM workflow analysis." (Ex. C.)

All CSMs employed at or below the IC-4 level, like Plaintiff, nationwide are similarly situated with regard to the central allegation in this case: regardless of Facebook's expectations regarding their job performance, CSMs' day-to-day job duties primarily involved non-exempt sales and "operational" or "tactical" work. As a result, Facebook misclassified CSMs as exempt from overtime under the FLSA and failed to pay them for any of their overtime hours worked at a rate of time and one half for time worked over 40 hours per week. (*See* Compl. ¶¶ 18-21, 29, 50-54.)

**D.** **The Proposed Collective Class.**

Plaintiff seeks to certify her FLSA overtime claims as a collective action under 29 U.S.C.

§ 216(b). Plaintiff's proposed collective class is:

> All individuals who were employed by Facebook as Client Solutions Managers at
> level IC-3 or IC-4 at any location in the United States during the period from three
> years prior to the entry of the conditional certification order to the present.[3]

The statute of limitations for an FLSA claim is three years where, as here, the plaintiff

alleges a willful violation. 29 U.S.C. § 255(a); ECF No. 1, Compl. ¶¶ 25, 55-56; *Nehmelman v.*

*Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 764 (N.D. Ill. 2011) (authorizing notice to a

conditional FLSA class of employees who worked within three years prior to the date of class

notice). Accordingly, notice should be directed to those employed within three years of the date of

the mailing of the notice, as extended by stipulation of the parties. *Id.*[4]

## II. THE FLSA STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA allows individuals to bring a collective action to recover unpaid overtime wages

on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). An FLSA

collective action is different from a Fed. R. Civ. P. 23 class action because plaintiffs wishing to

join an FLSA collective action must affirmatively consent ("opt-in") to the action. *Id.*; *Allen v.*

---

[3] Defendant amended its answer on September 12, 2018 to assert defenses alleging that certain prospective collective action members are subject to contracts mandating individualized arbitration proceedings that preclude them from asserting their FLSA claims in court. (*e.g.*, ECF No. 32, Affirmative Defense No. 14.) Plaintiff anticipates that Defendant will argue that those individuals should be excluded from the collective action. "Even if, however, it turns out that employees who receive a notice pursuant to conditional certification have signed enforceable arbitration agreements"—which is an issue not yet before the Court— "this is not the appropriate stage in the litigation to decide whether to excise those prospective members from the collective action. Whether an employee has signed an arbitration agreement does not speak to the dispositive legal question at the conditional certification stage: whether the putative members have claims with a factual nexus to Plaintiff['s] claims." *Gauzza v. Prospect Med. Holdings, Inc.,* No. CV 17-3599, 2018 WL 5452746, at *3 (E.D. Pa. Oct. 26, 2018).

[4] The parties have entered into two independent tolling agreements, which extend the limitations period for the claims of prospective members of the collective action an additional 111 days. *See* ECF Nos. 22 & 34.

*Marshall Field & Co.*, 93 F.R.D. 438, 441 (N.D. Ill. 1982).

The Supreme Court has described the judicial and legislative benefits of the collective action mechanism as follows:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity.

*Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). However, these benefits cannot be realized if the employees who suffered from the unlawful activity do not receive timely notice of the collective action and of their opportunity to opt-in. *Id.* Accordingly, courts have the power to facilitate the issuance of notice of an action to potential class members. *Id.* at 170-71; *Woods v. New York Life Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982). Speed is of the essence in issuing notice because the statute of limitations continues to run under the FLSA until aggrieved employees affirmatively opt-in to the action. *See* 29 U.S.C. § 216(b); *Harkins v. Riverboat Servs., Inc.*, No. 99 C 123, 2002 WL 32406581, at *2 (N.D. Ill. May 17, 2002).

In recognition of the judicial efficiencies and cost-saving benefits of collective actions, "the majority of courts—including this Court—have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Girolamo v. Cmty. Physical Therapy & Assocs.*, No. 15 C 2361, 2016 WL 3693426, at *2 (N.D. Ill. July 12, 2016) (internal quotation omitted). At the first stage, known as the "notice stage," the court determines whether the allegations are sufficient for the court to find that the representative plaintiff and putative class members are "similarly situated." *Id.* At this stage, plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (citation omitted). This showing "is not a stringent standard; a plaintiff need

only demonstrate a factual nexus that binds potential members of a collective action together." *Girolamo*, 2016 WL 3693426 at *3 (internal quotation omitted). Plaintiffs can meet their burden by providing "some evidence in the form of affidavits, declarations, deposition testimony, or other documents of a common policy to which they and other similarly situated employees were subjected." *Boltinghouse v. Abbott Labs., Inc.*, No. 15 CV 6223, 2016 WL 3940096, at *2 (N.D. Ill. July 20, 2016) (internal quotation omitted).

Importantly, affirmative defenses—individual or collective—raised by defendants, such as the applicability of FLSA exemptions, are not considered at this initial notice stage. *See, e.g.*, *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 990 (N.D. Ill. 2018); *cf. Jirak v. Abbott Labs.*, 566 F. Supp. 2d 845, 849–50 (N.D. Ill. 2008) ("the application of an FLSA exemption is an affirmative defense on which Defendant carries the burden of proof") (citations omitted). In addition, during the first stage certification analysis, "[t]he Court's determination as to whether a collective action may be appropriate … does not involve adjudication of the merits of the claims." *Girolamo*, 2016 WL 3693426 at *2. Nor does the court decide substantive issues or require conclusive support of plaintiffs' claims. *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007).

Once the court determines that the case is appropriate for conditional certification, it may then permit notice to prospective collective group members. The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. In the absence of timely notice, aggrieved employees could be deprived of the opportunity to participate until after their claims are diminished or extinguished by the passage of time. Because "delaying the

notification procedure … could have the undesirable effect of preventing potential opt-in plaintiffs from presenting their FLSA claims," the FLSA's broad remedial intent favors early notice to potential plaintiffs. *Larsen v. Clearchoice Mobility*, No. 11 C 1701, 2011 WL 3047484, at *2 (N.D. Ill. July 25, 2011).

## III.    ARGUMENT

Plaintiff has made more than the necessary modest showing that she is similarly situated to other CSMs employed by Facebook nationwide. Plaintiff and prospective members of the collective class are uniformly classified as exempt, perform the same job duties, and are subject to the same compensation plan and other terms and conditions of employment.

### A.    Because Plaintiff Easily Satisfies the "Modest Factual Showing" Standard, Conditional Certification Should Be Granted.

Plaintiff contends that Facebook willfully engaged in a practice of uniformly misclassifying her and other CSMs as exempt from the FLSA's overtime requirements and failed to pay them a rate of time and a half their regular rate for all hours worked over 40 in any given workweek.

At this preliminary notice stage, rather than evaluate the merits of Plaintiff's claims, the Court only determines whether Plaintiff and the class members are similarly situated with respect to these claims. In cases alleging FLSA misclassification, plaintiffs meet their low burden by making "some showing that there are other employees … who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation omitted); *see also Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2016 WL 7426135, at *3 (N.D. Ill. Dec. 23, 2016) (employees across the country who had the same responsibilities and compensation

structure were similarly situated for conditional certification purposes). But their situations need not be identical in all respects. The relevant issue is whether Plaintiff and potential opt-in plaintiffs were subjected to a common policy, practice, or plan to deprive them of overtime pay when they worked more than 40 hours per week. *Molina*, 566 F. Supp. 2d at 786.

Here, Plaintiff has easily satisfied and surpassed her burden of making a "modest factual showing" based on the record in the case. Plaintiff's Complaint sets forth detailed allegations, supported by Defendant's production and the testimony of Defendant's Rule 30(b)(6) designee and other witnesses, that Plaintiff and prospective class members were victims of Facebook's common unlawful policy to misclassify CSMs as exempt from overtime pay. CSMs employed by Facebook nationwide performed substantially similar job duties, were paid on the same base salary plus commission basis, were subject to sales quotas, received the same job training, had the same job requirements, and worked on pods with the same supervision structure. They were also subjected to the same unexplained Facebook decision, without the benefit of any analysis, to classify them as exempt. These similarities, tied with Plaintiff's central allegation CSMs' day-to-day job duties primarily involved non-exempt sales and "operational" or "tactical" work, together establish the factual nexus that binds the collective class together.

Critically, Facebook itself treated CSMs collectively when it uniformly classified CSMs at the IC-3 level and above as exempt. Again, and tellingly, Facebook did ***nothing*** to investigate or evaluate whether CSMs were properly classified as exempt. It simply classified them all as exempt, required them to work 60 or more hours per week, and withheld their hard-earned overtime pay. Such a "blanket classification" serves as evidence to "suggest that whatever differences exist among the employees' job duties, those differences are irrelevant for the purposes of determining the applicability of the FLSA." *Schaefer v. M & T Bank Corp.*, 122 F. Supp. 3d 189, 195–96

(S.D.N.Y. 2015); *Salmans v. Byron Udell & Assocs., Inc.*, No. 12-3452, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013) (corporate policy that designated all account executives as exempt was sufficient to meet conditional certification requirement); *Olmsted v. Residential Plus Mtg. Corp.*, Nos. 08-142, 08-419, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008) (class conditionally certified where plaintiff cited policy of routinely misclassifying employees).

In addition, federal courts in this district have conditionally certified collective groups of even more disparate groups of workers on similar facts. *See, e.g.*, *Slaughter*, 317 F. Supp. 3d at 991 (workers in seven different positions were "similarly situated in that they performed common duties and were subject to a company-wide policy that may have resulted in improperly denying them overtime compensation"); *Tamas v. Family Video Movie Club*, Inc., No. 11 C 1024, 2013 WL 4080649, at *3-4 (N.D. Ill. Aug. 13, 2013); *Olmsted*, 2008 WL 5157973 at *3. Moreover, courts have granted FLSA notice in cases where employees seeking compensation for unpaid wages have presented far less robust evidence than Plaintiff submits here. *Molina*, 566 F. Supp. 2d at 786 ("Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy."); *see also Boyington v. Percheron Field Servs., LLC*, No. 14-CV-90, 2015 WL 3756330, at *2 (W.D. Pa. June 16, 2015) (defendant's wide geographical presence did not result in any significant disparities in job duties to preclude conditional certification).

The evidence presented on the record in this case is more than sufficient to meet the modest "notice" standard to justify conditional certification. *See, e.g. Johnson v. ECT Contracting LLC*, No. 09-cv-0130, 2010 WL 625390, at *3 (M.D. Tenn. Feb. 18, 2010) (similarities in "job duties, training, and pay practices" is sufficient for conditional certification). In light of the allegations in

the Complaint, supported by the testimony of Facebook's Rule 30(b)(6) designee, other witnesses, and documents produced, Plaintiff has presented a clear record that CSMs performed the same job duties, were subject to the same compensation plan, and were unlawfully classified as exempt from the overtime requirements of the FLSA. Accordingly, the Court should grant this motion and authorize notice to potential opt-in plaintiffs advising them of their right to join this lawsuit.

**B.      Given the Remedial Purpose of the FLSA, the Court Should Exercise Its Discretion to Notify Similarly-Situated CSMs of Their Right to Opt-In to This Action.**

It has long been recognized "that district courts have the discretionary power to authorize the sending of notice to potential opt-in plaintiffs in a collective action brought pursuant to § 216(b) of the FLSA." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997), *citing Hoffmann-La Roche*, 493 U.S. at 170. As the Supreme Court observed when discussing the importance of providing notice to workers, "The broad remedial goal of the statute should be enforced to the full extent of its terms." *Hoffmann-La Roche*, 493 U.S. at 173. Sending notice, and thereby encouraging workers to enforce their rights, helps advance the FLSA's enforcement mechanism, which relies "not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 2 (2011), *quoting Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). However, these benefits cannot be realized if the workers who suffered from the unlawful activity do not receive timely notice of the collective action and of their opportunity to opt-in. *Hoffmann-La Roche*, 493 U.S. at 170. Simply put, workers cannot vindicate rights of which they are not aware.

In FLSA cases, unlike Rule 23 actions, class members do not receive the benefit of automatic tolling when a complaint is filed; instead, each employee's limitations period continues to run unless and until that employee opts in. 29 U.S.C. §§ 255(a), 256. Thus, speed is of the

essence, as with each passing day, every potential class member suffers harm in the form of newly time-barred claims. Because delaying the notification procedure could have the undesirable effect of preventing potential opt-in plaintiffs from presenting their FLSA claims, the FLSA's broad remedial intent favors early notice to potential plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 173. Without court-supervised notice, Plaintiff has no effective way to inform other CSMs of the pendency of this action or their right to join, and Defendant will have succeeded in keeping its other employees in the dark about their rights. Issuing notice now will advance the interests both of potential members of the collective action and the Court.

**C.**     **Plaintiff's Proposed Notice Is Fair, Adequate and Consistent With Court-Approved Notices in Other Similar Actions.**

Plaintiff's proposed form of Notice, attached as Exhibit A, meets the requirements of "timeliness, accuracy and information." *Hoffmann-La Roche*, 493 U.S. at 172. The Notice mirrors notice forms that other federal district courts have approved in similar cases. Plaintiff's proposed Notice will inform similarly-situated workers about this action and give them the opportunity to join. It also accurately describes Plaintiff's legal claims, the rights of prospective class members, and their options. Finally, the Notice provides clear instructions on how to "opt-in" to the lawsuit and sets forth the prohibition against discrimination or retaliation for participation in an FLSA action.

Plaintiff proposes that the Notice and Opt-in Consent Form be sent *via* first-class U.S. Mail and email to the members of the proposed collective class defined above and requests an order requiring Defendant to post a copy of the Notice at a location in each of its offices where potential opt-in Plaintiffs are likely to see it and learn about their rights related to this lawsuit. *See, e.g.*, *Slaughter*, 317 F. Supp. 3d at 994 (joining courts that have permitted notice by email because "of the prevalence of e-mail as a form of communication"); *Hudgins*, 2016 WL 7426135 at *6 (same);

*Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285(DAB), 2011 WL 4001072, at *5 (S.D.N.Y. Aug. 25, 2011) (holding that Courts routinely order that Notice be posted in common areas or employee bulletin board, even when notice is also provided via first-class mail).

Plaintiff requests that potential opt-in Plaintiffs interested in participating in this lawsuit be given 60 days from the Notice mailing to opt-in to this case. Plaintiff's request is consistent with established FLSA practice in this judicial district. *See, e.g.*, *Slaughter*, 317 F. Supp. 3d at 992 (permitting a 60-day notice and opt-in period); *see also Anyere v. Wells Fargo*, No. 09 C 2769, 2010 WL 1542180, at *4 (N.D. Ill. Apr. 12, 2010) (ordering a 120 day opt-in period). Further, Plaintiff proposes to send a reminder notice 20 days before the end of the opt-in period to any and all potential opt-in Plaintiffs who have not yet returned their Opt-In Consent Forms. Sending a reminder card serves both to remind those individuals who wish to join to do so within the notice period and to ensure that those whose notices were misplaced or not received or opened still have an opportunity to join. *See, e.g.*, *Boltinghouse*, 2016 WL 3940096 at *5 (authorizing use of a reminder notice).

## **CONCLUSION**

Plaintiff has presented detailed allegations concerning Facebook's unlawful policy and practice of misclassifying CSMs as exempt from overtime in violation of the FLSA. Because Plaintiff has met her nominal burden to set forth the factual basis from which this Court can determine that similarly situated individuals exist who have not been notified about this lawsuit, this Court should enforce the collective action provisions of the FLSA and authorize Notice. Plaintiff, therefore, respectfully asks the Court to grant his Motion as follows:

(1)    Order conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of the collective class defined in Section II.D above (the "FLSA Collective Class");

    (2)      Order Defendant to produce to Plaintiff, within ten days of its Order, a computer-readable data file containing the names, addresses, email addresses, telephone numbers, dates of employment, social security numbers and dates of birth for the members of the FLSA Collective Class;

    (3)      Order court-facilitated notice of this collective action to the FLSA Class in the form attached as Exhibit A;

    (4)      Authorize Plaintiff to send the Notice, at her expense, by first-class U.S. Mail and email to all members of the FLSA Collective Class to inform them of their right to opt-in to this lawsuit and a reminder notice 20 days before the end of the opt-in period; and

    (5)      Order the posting of the Notice at a location in each of Defendant's offices where members of the FLSA Collective Class are likely to view it.

DATED: November 8, 2018               Respectfully Submitted,

                                   */s/ Ryan F. Stephan*

                                   Ryan F. Stephan
                                   Teresa M. Becvar
                                   **STEPHAN ZOURAS, LLP**
                                   100 North Riverside Plaza, Suite 2150
                                   Chicago, IL 60606
                                   (312) 233-1550
                                   rstephan@stephanzouras.com
                                   tbecvar@stephanzouras.com

                                   ***Attorneys for Plaintiff***

17

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on November 8, 2018, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*<u>s/ Ryan F. Stephan</u>*