UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSIE BIGGER, on behalf of herself Individually, and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) | Case No.: 1:17-cv-7753 |
| v. ) | Jury Trial Demanded |
| ) | |
| FACEBOOK, INC., ) | Judge Harry D. Leinenweber |
| ) | |
| Defendant. ) | |

**DEFENDANT FACEBOOK, INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

Defendant Facebook, Inc. ("Facebook"), by and through its undersigned attorneys, opposes Plaintiff's Motion for Conditional Certification as a Collective Action and Issuance of Notice Under 29 U.S.C. §216(b) (the "Motion") as follows:

**I.     INTRODUCTION**

Plaintiff's Motion should be denied because the Court cannot conditionally certify a collective of plaintiffs for a nonexistent FLSA claim. As explained in Facebook's Motion for Summary Judgment and Supporting Memorandum ("MSJ") (Dkt. Nos. 48-51), Plaintiff is exempt under the FLSA's highly compensated employee ("HCE") exemption. No other CSMs have consented to join in this lawsuit, meaning that if Facebook's MSJ is granted, there is no plaintiff with any justiciable claim against Facebook, rendering the case moot and depriving the Court of subject matter jurisdiction. Because Plaintiff's non-existent claim should not be used as a vehicle for sending out notice, the applicability of the HCE to Plaintiff's claim is central to both Facebook's MSJ and Plaintiff's Motion, and the two motions must be decided together. Alternatively, even if the Court is inclined to grant conditional certification of a particular subset

of CSMs, it should exclude CSMs who are not similarly situated to Plaintiff, specifically those who: (1) entered into mandatory arbitration and collective action waivers with Facebook (and thereby are contractually prohibited from suing Facebook in Court and participating in this lawsuit); and (2) made less than $100,000 per year (and are not subject to the same HCE exemption test as Plaintiff.)

## II. PROCEDURAL HISTORY AND RELEVANT FACTS

Plaintiff's Motion seeks to certify a nationwide class of:

> All present and former employees of Facebook, Inc. ("Facebook" or "Defendant") who were employed as Client Solutions Managers at level IC-3 or IC-4 at any time from [THREE YEARS PRECEDING COURT APPROVAL OF NOTICE] through the present.

(Dkt. 45, 45-1.) To date, only Plaintiff has consented to join in this lawsuit.

On August 22, 2018, Facebook filed a Motion for leave to file its Counterclaim (Dkt. 27), seeking to enforce Mutual Arbitration Agreements entered into by certain putative collective members. Those Agreements mandate arbitration of disputes between those employees and Facebook, and preclude those employees from suing Facebook in this Court and from participating in any collective action. (S*ee* Dkt. 27-2 and 27-3; **Exhibit 1**, Declaration of N. Hickman ("Hickman Dec."), and Exhibits A and B thereto.) At the hearing on Facebook's Motion for Leave, both the Court and Plaintiff's counsel agreed that the appropriate time for enforcement of these agreements was at the conditional certification stage. (**Exhibit 2**, Transcript of Proceedings before the Honorable Harry D. Leinenweber, August 30, 2018, at pp. 4:8-5:22 ("8/30/18 Hearing Tr.").)

Based on admissions and statements of fact expressed by Plaintiff in her deposition, Facebook moved for summary judgment with regard to Plaintiff's claims on November 15, 2018. (Dkt. 48-52.) Plaintiff's own admissions establish she was an exempt employee under the FLSA's HCE test: she was compensated in an amount well in excess of $100,000 per year and the substance

of her work (i.e. learning and assessing client needs, liaising with Facebook's internal resources and experts in order to identify or create products to address client needs, and serving as the ongoing point of contact in troubleshooting and carrying out the client's advertising campaign on Facebook's platform) was directly related to both Facebook's general business operations as well as the business operations of Facebook's clients. In carrying out these duties, Plaintiff exercised independent judgment and discretion on matters of significance to Facebook and Facebook's customers. (*See, e.g.,* Dkt. 51, SOF 18, 23-80; Dkt. 49, pp. 3-20.) Thus, Plaintiff has no live FLSA claim. No other Facebook CSM has filed a consent to participate in this action.

### III. CONDITIONAL CERTIFICATION SHOULD BE DENIED AS MOOT

The Court should deny conditional certification because, as explained in Facebook's MSJ, the sole plaintiff in this case is exempt from the FLSA under the HCE exemption and has no cause of action under the FLSA.[1] This renders both her claims and the purported FLSA Section 216(b) collective action claims moot; it also deprives the Court of subject matter jurisdiction.

The Supreme Court's central holding in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69-74 (2013) – that a potential collective action is no longer justiciable when the lone plaintiff's individual claim becomes moot – dooms Plaintiff's bid for conditional certification here. "Under Article III, § 2 of the United States Constitution, federal court jurisdiction is limited to 'actual, ongoing controversies.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 626 (7th Cir. 2007) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)); *see also Medlock v. Trs. of Ind. Univ.*, 683 F.3d 880, 882 (7th Cir. 2012). The fact that a plaintiff at one point may have been

---

[1] While the standard for first-stage conditional certification is generally low, the Court must still evaluate the record to determine whether Plaintiff has presented evidentiary support demonstrating a factual nexus between her and other potential plaintiffs with respect to a claim that they collectively were victims of the same violation of law. *Howard v. Securitas Security Services*, 2009 WL 140126, at *2, *5 (N.D. Ill. Jan. 20, 2009). Plaintiff cannot meet even that low burden because she has suffered no injury, let alone a common one.

entitled to pursue her action makes no difference because "[i]n order to satisfy Article III's jurisdictional requirements, 'the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Id.* (brackets omitted) (quoting *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 68 n.22 (1997)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point, the action can no longer proceed and must be dismissed as moot." *Symczyk,* 569 U.S. at 72 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

In *Symczyk,* the plaintiff filed an FLSA action on behalf of herself and similarly situated employees. 569 U.S. at 69-71. The defendants thereafter served the plaintiff with an offer of judgment that fully satisfied her individual claim, but she did not accept the offer. *See id.* The majority opinion assumed, without deciding, that the plaintiff's claim was mooted by the unaccepted offer of judgment. *See id.* at 71-74. The Supreme Court then turned to the main issue presented—whether the action "remain[ed] justiciable based on the collective-action allegations in her complaint." *Id.* at 73. "In the absence of any claimants opting in," the Court held, "[the plaintiff's] suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action." *Id.* The Court further ruled that "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.*[2]

The same principles of mootness apply to this proposed collective action. As explained in

---

[2] The Court also rejected the plaintiff's reliance on Rule 23 cases, noting "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Id.* at 74; *see also id.* at 75 (explaining that a certified Rule 23 class "acquires an independent legal status," whereas the "sole consequence" of FLSA conditional certification is the sending of notice to employees who must file written consent to become parties); *Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir.2003) (per curiam) ("In contrast to the Rule 23 plaintiff, a § 216(b) plaintiff has no claim that he is entitled to represent other plaintiffs."). The Court therefore determined that "this action was appropriately dismissed as moot." *See* 569 U.S. at 74.

Facebook's MSJ (Dkt. Nos. 48-51.5), Plaintiff does not have a justiciable claim under the FLSA's more streamlined HCE exemption test because she earned more than $100,000 per year and customarily and regularly performed at least one administratively exempt duty. (Dkt. 49, Memorandum in Support of Facebook's MSJ at pp. 3-20.) *See* 29 C.F.R. § 541.601(a); *Zelenika v. Commonwealth Edison Co.*, 09-C-2964, 2012 WL 3005375, *12 (N.D.Ill. July 23, 2012). As explained in detail in Facebook's MSJ, Plaintiff's own testimony establishes that she customarily and regularly engaged in a variety of duties that the Seventh Circuit has repeatedly found to be administratively exempt, such as advising clients about their use of Facebook's suite of advertising products in its ever evolving digital marketing environment, acting as a key liaison between clients and internal cross-functional partners within Facebook, and other sales promotion activities, in an effort to help Facebook and its clients grow their respective businesses. (Dkt. 49 at pp. 3-20.) *See Schaefer-LaRose v. Eli Lily & Co.*, 679 F.3d 560, 574-76 (7th Cir. 2012) (employees whose work is to support and promote sales were exempt); *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 757 (7th Cir. 2013)(same); *Verkuilen v. MediaBank, LLC,* 646 F.3d 979 (7th Cir. 2011) (employee who acted as intermediary between clients and company's software developers was exempt).

Further, and although not required by the HCE exemption given that her duties were administratively exempt, Plaintiff's job exemplifies, by the common and legal definitions, the term "discretion and judgment."[3] 29 C.F.R. § 541.202(a). Plaintiff's activities are precisely the "problem solving" activities that are critical to Facebook's economic success[4] that courts deem to

---

[3] Critically, despite her repeated claims that she did not have discretion, Plaintiff testified she believed she was performing at an IC5 level, a classification which imposes an even higher obligation upon incumbents to operate autonomously and exercise sound judgment than upon employees in Plaintiff's IC4 position. (Dkt. 51, SOF 80.) Plaintiff does not seek to include CSMs above the IC4 level in her proposed class, at least tacitly acknowledging that CSMs in IC5 roles are properly classified as exempt.

[4] The better Plaintiff analyzed campaign performance data, engaged in troubleshooting, offered solutions, extracted insights, and translated insights into actionable recommendations and optimization strategies to

satisfy the third administrative exemption prong. (Dkt. 49 at pp. 17-20.) *See, e.g.*, *Verkuilen*, 2010 WL 3003860, at *3 (employee who was primary customer contact for important clients and helped to resolve their problems exercised discretion with respect to matters of significance.)

Based on Plaintiff's own testimony, Facebook is entitled to summary judgment on her FLSA claim and accordingly she no longer has any personal stake in the outcome of this litigation or interest in representing others in this action. *Symczyk,* 569 U.S. at 71-74. There are no other named or opt-in plaintiffs who have a stake in the litigation or standing to pursue the FLSA claims. Therefore, "the action can no longer proceed and must be dismissed as moot." *Id. at 72.*

Courts in this jurisdiction and others have reached this same inevitable conclusion that where summary judgment is warranted on all plaintiffs' individual claim(s), and there is no other individual with standing to pursue the claims, conditional certification must be denied as moot. *See Mullins v. Target Corp.*, No. 09 C 7573, 2011 WL 1399262, at *9 (N.D. Ill. Apr. 13, 2011) (granting summary judgment and thus denying motion for conditional certification of FLSA claim as moot); *Hollins v. Regency Corp. et al.,* 144 F. Supp. 3d 990, 993 (N.D. Ill. 2015) *aff'd,* 867 F.3d 830 (7th Cir. 2017); *see also Withrow v. Sedgwick Claims Mgmt. Serv., Inc.,* 841 F. Supp. 2d 972, 987-88 (S.D.W.Va. 2012) ("Because the court grants the defendant's Motion for Summary Judgment as to the FLSA claims for all the plaintiffs, the plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA is **DENIED as moot.**") (emphasis in original); *Glanville v. Dupar, Inc.,* No. Civ-A H-08-2537, 2009 WL 3255292, at *12 (S.D.Tex. Sept. 25, 2009) (same).

Put simply, Plaintiff is exempt from the FLSA as a matter of law under the HCE exemption, meaning that summary judgment is warranted, and she no longer has standing to pursue an FLSA

---

help her clients realize more return on their investment, the more her clients were incentivized to invest even more of their advertising dollars in Facebook. (Dkt. 51, SOF 5, 26, 33, 42, 50, 55, 58, 70.)

claim. There are no other opt-in plaintiffs who can represent any putative collective of FLSA plaintiffs. *Symczyk,* 569 U.S. at 73-74. Accordingly, there is no viable claim to be conditionally certified and the instant motion should be denied as moot.

IV. **EVEN IF THE COLLECTIVE IS CERTIFIED, ITS SCOPE MUST BE LIMITED**

While the FLSA does not define the term "similarly-situated," nor does it instruct courts when to exercise their discretion and authorize notice to potential plaintiffs, a majority of federal courts have adopted a two-step approach to FLSA collective actions. *See, e.g.*, *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003); *Nunez v. Pizza Nova, Inc.*, No. 03 C 5928, 2003 WL 23150111, at *1 (N.D. Ill. Dec. 30, 2003). At this first stage, the proponent of conditional certification must present evidentiary support demonstrating a factual nexus between the plaintiff and other potential plaintiffs. *Howard*, 2009 WL 140126, at *2, *5; *DeMarco v. Northwestern Memorial Healthcare*, No. 10 C 397, 2011 WL 3510905, at *1 (N.D. Ill. Aug. 10, 2011). The conditional certification stage is an important step in a putative collective action and it would be a waste of "time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). For those reasons, conditional certification is often denied, in whole or in part, for lack of evidence binding together the proposed plaintiffs with the claims at issue. *See Streeter-Dougan v. Kirkston Mtg. Lending, LLC*, 13-cv-00166, 2013 WL 6174936, at *2 (N.D. Ill. Nov. 21, 2013) (denying conditional certification); *Boyd v. Alutiiq Global Solutions, LLC*, 11-cv-0753, 2011 WL 3511085 (N.D. Ill. Aug. 8, 2011) (same).

    A. **CSMs With Mandatory Arbitration Agreements Should Not Receive Notice**

Here, Plaintiff is attempting to sidestep the very nature of the test for collective certification – whether a nexus exists between her and other **potential plaintiffs** - by including CSMs in her

7

collective who are **not potential plaintiffs** to this lawsuit. Rather, she seeks to include CSMs who have agreed to be contractually prohibited both from bringing a lawsuit relating to their employment against Facebook in this Court **and** from participating in this (or any other) case as a collective action. Accordingly, Plaintiff's motion should be denied with respect to those CSMs who signed arbitration agreements and collective action waivers with Facebook.

1. <u>The Arbitration Agreements and Collective Action Waivers Are Enforceable</u>

More than 252 of the CSMs who Plaintiff seeks to include within her collective executed Mutual Arbitration Agreements and Class Action Waivers with Facebook. (Ex. 1, Hickman Dec. Exs. A and B (arbitration agreements).) Therein, the CSMs agreed that they would arbitrate all claims for "non-payment, incorrect payment, or overpayment of wages ... whether such claims be pursuant to ... any federal, state, or municipal laws concerning wages, ... failure to pay wages ... and/or any other claims involving employee compensation issues." (*Id.*, Ex. A, Ex. B at p. 1.) Of course, this lawsuit is entirely about an alleged failure to pay wages, and Plaintiff's instant motion deals solely with that alleged failure under federal law, the precise subject of the preceding quote from the Arbitration Agreements signed by CSMs. Moreover, those same Agreements mandate that all such claims be "brought in the party's individual capacity, and not as a plaintiff or class member in any purported class or collective proceeding" either in court or in arbitration. (*Id.*, Ex. A, at p. 2; *see also* Ex. B at pp. 2-3.) Again, Plaintiff's Motion is an undisputed attempt to initiate a collective action, precisely what the CSMs who entered into these Agreements agreed is prohibited by these Agreements.

Federal law embodies a clear policy in favor of arbitration. *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (arbitration agreements "must be rigorously enforced"). Supreme Court precedent demonstrates a liberal policy favoring arbitration and mandates that arbitration agreements be enforced according to their terms. *E.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339,

8

344 (2011); *see also Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). Any doubt as to the scope of arbitrable issues ought to be resolved in favor of arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (noting that a presumption in favor of arbitration is particularly applicable when the arbitration agreement is broad in scope).

Indeed, on May 21, 2018, the United States Supreme Court issued *Epic Systems Corp. v. Lewis*, holding that arbitration agreements and collective action waivers are enforceable in the employment context save for defenses generally applicable to contracts as set forth in the Federal Arbitration Act (FAA). 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018). Based on that ruling, and earlier rulings such as *AT&T Mobility LLC v. Concepcion*, there is no question that such agreements are enforceable unless obtained by fraud, duress, or are otherwise unconscionable.[5] 563 U.S. 333 (2011) (class action waivers contained within arbitration agreements are enforceable under the FAA, which preempts state law that attempts to erect barriers to their enforcement).

Whether the parties entered into a valid contract to arbitrate is a simple question of contract law, *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257. 260 (7th Cir. 1995), requiring courts to apply ordinary state-law principles of contract formation. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997). All Facebook must show is that (1) there is a valid and enforceable agreement to arbitrate, and (2) the claims presented fall within the agreement's scope. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Security Ins. Co. of Hartford v. Midwest Indem. Corp.*, No. 98 C 1357, 1999 WL 39544, *2 (N.D. Ill. Jan. 20, 1999).

The Agreements here easily satisfy those requirements. Facebook presented these agreements to the subject CSMs, constituting an offer. The CSMs accepted the offer by signing

---

[5] These defenses are necessarily individualized such that any CSMs who would seek to avoid their Agreement would require single mini-trials on that issue, thereby further complicating this case and demonstrating that they are not similarly situated to Plaintiff.

9

their agreements and by working for Facebook. The necessary consideration was provided both by the CSMs' continued employment and by the mutuality of promises in the Agreements. *E.g.*, *Corbett v. DRH Cambridge Homes, Inc.*, No. 04 C 3344, 2005 WL 1838456, at *2 (N.D. Ill. July 26, 2005) (citing *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637 (7th Cir. 1999)). The Agreements clearly evince the intent to include employment-related claims, and specifically wage and hour claims, to binding arbitration, clearly stating that all "claims for non-payment, incorrect payment, or overpayment of wages … whether such claims be pursuant to … any federal, state, or municipal laws concerning wages, … failure to pay wages … and/or any other claims involving employee compensation issues" are subject to arbitration. (Ex. 1, Hickman Dec., Exs. A and B). Accordingly, they are enforceable as a bar to participation in this case.

       2. <u>As the Court Stated in its August 30, 2018 ruling, This Issue Can and Should be Decided at this Conditional Certification Stage</u>

In light of *Epic*, and in an attempt to address this very issue early in the case to avoid unnecessary motions, Facebook filed its Motion for Leave to Amend to add a counterclaim for a Declaratory Relief finding that the Agreements are enforceable under *Epic*. When Plaintiff opposed, the Court **and Plaintiff's counsel** agreed that the proper time to determine this issue was at the conditional certification stage. At the hearing on Facebook's Motion, Facebook indicated that the purpose of seeking this relief was to prevent notice issuing to individuals who were precluded from participating in this case by virtue of their Agreements with Facebook. (Ex. 2, 8/30/18 Hearing Tr. at 4:8-10.) The Court explained his view that the appropriate vehicle was to object to Plaintiff's proposed notice. (*Id.* at 4:11-12.) Plaintiff's counsel agreed, stating "Your Honor, I do believe that issue will play out in briefing on conditional certification of the class, and that's why – that's the basis of our objection here." (*Id.* at 4:15-18.) The Court explicitly agreed,

instructing "you just object to her class, and I'll rule on it." (*Id.* at 4:21-22.)[6]

Facebook is doing exactly what this Court asked it to do – raising the issue now in response to Plaintiff's proposed notice. And it should be decided now. CSMs who agreed not to sue Facebook in this Court, or in a collective action cannot participate in this case. They are not "potential plaintiffs" by virtue of their own contractual agreements with Facebook. Both Plaintiff's counsel and this Court have recognized that this is a "gateway" issue fundamental to conditional certification and should be determined at this stage.

Whether a binding arbitration agreement exists that would preclude a potential party from bringing suit in court is a gateway issue that must be determined as early as possible. *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 570 n. 2 (2013). To certify the collective as defined by Plaintiff to include CSMs who are legally prohibited from participating in this case runs afoul of not only that idea but the very nature and purpose of certification under the FLSA, which is to streamline litigation and avoid the unnecessary expenditure of time and resources. As is noted repeatedly by federal courts, when determining conditional certification, courts should remain mindful of their "responsibility to refrain from stirring up unwarranted litigation." *E.g.*, *Lentz v. Spanky's Rest., Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007).[7]

This is precisely what Plaintiff is asking this Court to do by attempting to send notice to a substantial number of individuals **who cannot take part in this case**.[8] There is no reason to allow

---

[6] Plaintiff objected to Facebook's counterclaim arguing that it did not have standing because Plaintiff did not sign an Arbitration Agreement. Plaintiff's argument makes Facebook's point: she is not similarly situated to CSM's who have signed arbitration agreements because they have precluded themselves from participating in this case, and that is a threshold issue that should be determined now as a matter of law and, if not, as a matter of fairness and judicial economy.

[7] *See also Lima v. Int'l Catastrophe Sol.'s, Inc.*, 493 F. Supp. 2d 793, 799-80 (E.D. La. 2007); *Mendoza v. Mo's Fisherman Exch., Inc.*, No. ELH-15-1427, 2016 WL 8669955, at *4 (D. Md. Oct. 14, 2016); *Morales v. Rite Rug Co.*, No. 3:16-cv-00072, 2017 WL 6945344, at *3 (M.D. Tenn. Jan. 23, 2017).

[8] Plaintiff's proposed notice even states that its purpose is to "instruct you on the procedure for participating in this suit" and "you may join this suit". Plaintiff's Motion Ex. A. However, that is inaccurate since those

11

them to do exactly what the courts cited above were concerned about. This Court would be authorizing Plaintiff and her counsel to solicit countless people who are barred from participating in this case, thereby forcing Facebook to bring unnecessary motions before this Court to compel each of them to individual arbitration even though it can be determined right here and now that they cannot be parties to this case.

These CSMs, unlike Plaintiff, signed Arbitration Agreements with collective action waivers that by their clear terms bar them from joining this lawsuit. (Ex. 1, Hickman Dec., Exs. A and B.) This Court should decline the invitation to stir up unnecessary motion practice in this case in the form of motions to compel those CSMs to the arbitrations to which they have already agreed. Instead, the Court should, as it recognized in August, rule that those CSMs who signed arbitration agreements are contractually precluded from participating in this collective action and not similarly situated to Plaintiff and, thus, deny Plaintiff's Motion with respect to those CSMs.[9]

### B. CSMs Who Earned Less than $100,000 Are not Similarly Situated to Plaintiff

Any certified collective should exclude all CSMs who made less than $100,000 per year because those employees are not covered by the HCE and, thus, are not similarly situated to Plaintiff. Plaintiff's claims in this case will hinge on two determinations: (1) did she work more than 40 hours in a workweek and thus qualify for overtime notwithstanding an exemption and (2) does an exemption apply.  It is this second question which necessarily requires application of a test for exemption under the FLSA, and thus divides the putative collective she seeks to certify.

---

[9] CSMs who signed arbitration agreements with collective action waivers cannot participate in this suit at all. *See Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2017 WL 514191, at *4 (N.D. Ill. Feb. 8, 2017) (limiting notice to those potential collective members who had ***not*** signed arbitration agreements); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2017) (same); *Longnecker v. American Exp. Co.*, No. 2:14-cv-0069, 2014 WL 4071662, at *7 (D. Az. Aug. 18, 2014) (same).

The two potential exemption tests at issue are the Administrative Exemption and the HCE. Under the streamlined HCE test, the **"high level of compensation is a strong indicator of an employee's exempt status**, [which] eliminates the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c) (emphasis added). Under that test, an employee is exempt if she (1) was paid more than $100,000 per year; and (2) customarily and regularly **either** (a) performed at least one administratively exempt duty; **or** (b) exercised discretion in her duties. 29 C.F.R. § 541.601(a); *Zelenika*, 2012 WL 3005375 at *12. Here, it is undisputed that Plaintiff was paid more than $100,000 in every year she worked for Facebook. (Dkt. 51, SOF 18.) Thus, the HCE test applies to Plaintiff. However, for employees who did not make at least $100,000 in every year as a CSM, a distinct, more detailed test applies: (1) whether the opt-in plaintiffs' primary duty was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; **AND** (2) whether their primary duty included the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). This is a substantial difference: it requires the presence of multiple elements; and applies a different standard to the duties test.

As such, a finder of fact will be required to apply separate legal frameworks to the tests for putative collective members who made less than $100,000 than the one they must apply to Plaintiff. That is not the hallmark of being similarly situated as even if the facts were the same for each person, which they are not, the legal test itself is dissimilar. Accordingly, any collective that includes Plaintiff should exclude CSMs who are not eligible for the HCE.

## V. PLAINTIFF'S PROPOSED NOTICE SHOULD BE REVISED

Should this Court determine that conditional certification is warranted to any degree, several of Plaintiff's requests regarding notice to the proposed collective are unwarranted and the proposed notice is incomplete. First, while Plaintiff's notice informs potential opt-ins that, by

13

joining the lawsuit, they will be bound by Plaintiff's agreements with her counsel concerning fees and costs it does not inform them as to what those agreements are or may be. (Plaintiff's Ex. A, ¶ V.) For example, it fails to inform potential opt-ins if there are circumstances under which they may have to bear costs or pay fees to Plaintiff's counsel. The Notice should disclose any such details so that potential opt-ins can make an informed choice as to their participation.

Second, Plaintiff's request for proposed collective members' email addresses and email notice is unnecessarily intrusive and entirely unwarranted. Courts regularly deny such requests absent some showing of a particular need. *See, e.g.*, *Frebes v. Mask Restaurants, LLC*, No. 13 C 3473, 2014 WL 1848461, at *7 (N.D. Ill. May 8, 2014) (denying request for telephone numbers and email addresses of putative class members); *Alexander v. Caraustar Indus., Inc.*, No. 11 C 1007, 2011 WL 2550830, at *3 (N.D. Ill. June 27, 2011) (same); *Brand v. Comcast Corp*, No. 12 CV 1122, 2012 WL 4482124, at *9 (N.D. Ill. Sept. 26, 2012) (same). There is no reason to stray from this common practice as direct mail notice is clearly feasible and adequate.

Third, a reminder notice, which is essentially just a second notice, is (1) unnecessary in light of the adequacy of direct-mailed notice, (2) unfair to Facebook because it may be seen as the Court encouraging putative collective members to join this action, and (3) requires additional and unwarranted cost to an already expensive process. The weight of decisional authority from the federal courts in this circuit and across the country favors a single notice, and courts routinely deny requests for "reminder" notices.[10]

---

[10] *See, e.g.*, *Smallwood v. Ill. Bell Tel. Co.*, 710 F.Supp.2d 746, 753-54 (N.D. Ill. 2010) ("a reminder is unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit")(internal quotation marks omitted); *Witteman v. Wisconsin Bell, Inc.*, No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wisc. Feb. 2, 2010) (same); *Schroeder v. Humana, Inc.*, No. 12-C-0137, 2012 WL 5931886, at *9 (W.D. Wisc. Nov. 12, 2012); *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (same); *In re Bank of America Wage & Hour Employment Litig.*, 286 F.RD. 572, 601 (D. Kan. 2012); *Byard v. Verizon W.V., Inc.*, 287 F.R.D. 365, 373 (N.D. W.V. 2012) (reminder notice was unnecessary and potentially improper).

Fourth, Plaintiff's request to post notice in all of Facebook's locations should be denied since (1) there is no question that mailed notice is feasible and adequate, and (2) posting notice in Facebook's place of business is too intrusive considering the adequacy of mailed notice.[11] Accordingly, should the Court choose to grant conditional certification in any respect, the proposed notice should be revised, notice should only be sent once to putative collective members, notice should be sent via first class mail, and Plaintiff's request for email addresses should be denied.

### VI. CONCLUSION

Plaintiff's Motion should be denied, first and foremost, as moot, because Plaintiff is exempt from the FLSA under the HCE, and there are no consenting opt-in plaintiffs to represent a putative collective with respect to that claim. Even if the Court determines conditional certification is appropriate, however, the Motion should be denied as to CSMs who are not similarly situated to Plaintiff: (1) CSMs who, by virtue of arbitration and class/collective waiver agreements, may not participate in this lawsuit as a matter of contract; and (2) CSMs who made less than $100,000 annually and, therefore, are not subject to the HCE test. Finally, Plaintiff's proposed notice is inappropriate and, to the extent notice is appropriate at all, the Court should modify it in accordance with the foregoing.

Dated: December 7, 2018

Respectfully submitted,

By: /s/ Anneliese Wermuth
    Anneliese Wermuth
    One of the Attorneys for Defendant,
    Facebook, Inc.

---

[11] *See, e.g.*, *Howard*, 2009 WL 140126, at *9; *Calderon v. Geico Gen. Ins. Co.*, NO. RWT 10cv1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (posting notices would be "unnecessarily intrusive while concomitantly serving little purpose"); *In re Bank of America Wage & Hour Employment Litig.*, 286 F.RD. at 601; *Wass v. NPC Int'l, Inc.*, No. 09-2254, 2011 WL 1118774, at *12 (D. Kan. March 28, 2011).

Anneliese Wermuth, ARDC No. 6270970
Jason E. Barsanti, ARDC No. 6289014
Jenny R. Goltz, ARDC No. 6290036
COZEN O'CONNOR
123 N. Wacker Drive
Suite 1800
Chicago, Illinois  60606
312-474-7900
312-474-7898
awermuth@cozen.com
jbarsanti@cozen.com
jgoltz@cozen.com
*Counsel for Defendant Facebook, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing *Defendant Facebook, Inc.'s Opposition to Plaintiff's Motion for Conditional Certifications* was electronically filed with the Clerk of Court using the CM/ECF system and served upon the attorneys shown below by transmittal of a Notice of Electronic Filing:

>Ryan F. Stephan
>James B. Zouras
>Teresa M. Becvar
>STEPHAN ZOURAS, LLP
>100 North Riverside Plaza, Ste. 2150
>Chicago, IL 60606
>rstephan@stephanzouras.com
>jzouras@stephanzouras.com
>tbecvar@stephanzouras.com

Dated: December 7, 2018

>/s/ *Anneliese Wermuth*
>Anneliese Wermuth