**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUSIE BIGGER, on behalf of herself, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC,<br><br>        Defendant. | No. 1:17-cv-7753<br><br>Honorable Harry D. Leinenweber |

**BRIEF OF AMICUS CURIAE THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF FACEBOOK'S EMERGENCY MOTION FOR STAY AND MOTION TO CERTIFY §1292(B) INTERLOCUTORY APPEAL**

Lauren R. Goldman
Karen W. Lin (*pro hac vice application forthcoming*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
lrgoldman@mayerbrown.com
klin@mayerbrown.com

Archis A. Parasharami
Andrew J. Pincus (*pro hac vice application forthcoming*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
aparasharami@mayerbrown.com
apincus@mayerbrown.com

Michael A. Scodro
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
mscodro@mayerbrown.com

*Counsel for Amicus Curiae the
Chamber of Commerce of the United
States of America*

**TABLE OF CONTENTS**

**Page**

INTEREST OF *AMICUS CURIAE* ................................................................................................ 1

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     FACEBOOK'S MOTION RAISES A SIGNIFICANT ISSUE OF NATIONWIDE IMPORTANCE REGARDING THE ENFORCEABILITY OF ARBITRATION AGREEMENTS .................................................................................................................. 2

    A.     Courts Have Consistently Recognized The Strong Federal Policy Favoring Enforcement Of Arbitration Agreements ............................................................. 2

    B.     Requiring Companies To Give Notice Of A Class Action To Employees Who Are Parties To Arbitration Agreements Undermines The Federal Policy Favoring Enforcement Of Arbitration Agreements ................................... 5

II.    THERE IS A PRESSING NEED FOR APPELLATE GUIDANCE ............................... 7

III.   THIS COURT SHOULD GRANT A STAY PENDING APPEAL ................................. 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agarunova v. Stella Orton Home Care Agency, Inc.*,
  2019 WL 1114897 (E.D.N.Y. Mar. 11, 2019) ................................................................. 8

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) ........................................................................................... 1, 3, 4, 7

*Amrhein v. Regency Mgmt. Servs., LLC*,
  2014 WL 1155356 (D. Md. Mar. 20, 2014) ................................................................... 8

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
  634 F. Supp. 2d 1081 (E.D. Cal. 2008) ........................................................................ 8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................. 1, 4, 5, 6

*Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*,
  128 F.3d 504 (7th Cir. 1997) ....................................................................................... 10

*ChampionsWorld, LLC v. U.S. Soccer Fed'n*,
  2007 WL 2198366 (N.D. Ill. July 31, 2007) ................................................................. 5

*CompuCredit Corp. v. Greenwood*,
  565 U.S. 95 (2012) ........................................................................................................ 4

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ..................................................................................................... 4

*DIRECTV, Inc. v. Imburgia*,
  136 S. Ct. 463 (2015) ................................................................................................ 1, 4

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ..................................................................................................... 3

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ..................................................................................... 1, 3, 4, 5, 7, 8

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ....................................................................................................... 7

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ..................................................................................................... 7

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Hudgins v. Total Quality Logistics, LLC*,
2017 WL 514191 (N.D. Ill. Feb. 8, 2017) ....8

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) ....2, 7, 9

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) ....1

*Lummus Co. v. Commonwealth Oil Refining Co.*,
273 F.2d 613 (1st Cir.1959) ....10

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ....7

*Montero v. JPMorgan Chase & Co.*,
2017 WL 1425611 (N.D. Ill. Mar. 22, 2017) ....8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....3

*Preston v. Ferrer*,
552 U.S. 346 (2008) ....4

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ....3

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ....3

*Su v. Siemens Indus.*,
2014 WL 2600539 (N.D. Cal. June 10, 2014) ....8

**Statutes**

9 U.S.C. § 1 ....1, 2

9 U.S.C. § 2 ....3

29 U.S.C. § 216 ....7

**Other Authorities**

H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924) ....3

## INTEREST OF *AMICUS CURIAE*

The Chamber of Commerce of the United States of America is the world's largest business federation, representing 300,000 direct members and indirectly representing an underlying membership of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the country. The Chamber regularly files *amicus* briefs in cases that raise issues of concern to the nation's business community, including cases involving the enforceability of arbitration agreements. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463 (2015); *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Because the simplicity, informality, and expedition of arbitration depend on the courts' consistent recognition and application of the principles underlying the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the Chamber and its members have a strong interest in these cases.

## INTRODUCTION

This case implicates an issue of significant national importance that hundreds of district courts across the country have confronted and hundreds more are likely to confront: whether a company can be required to send notice of a pending putative collective action under the Fair Labor Standards Act ("FLSA") to employees who cannot join that collective action because they are parties to agreements to resolve their disputes by arbitration on an individual basis rather than through collective or class actions.

For nearly a century, there has been an "emphatic federal policy" favoring rigorous enforcement of arbitration agreements. *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). As this Court acknowledged, requiring an employer to send notice of a pending collective action to employees who are parties to arbitration agreements "conflict[s]" with this longstanding federal

policy by effectively treating those agreements as presumptively *invalid* and by depriving employers of the benefits of arbitration.

This acknowledged conflict with an important federal policy on a controlling issue of law is alone sufficient to justify certifying an interlocutory appeal. But the need for immediate appellate guidance is even more pressing because district courts are divided on this issue, which has engendered uncertainty and confusion about whether arbitration agreements may be disregarded at the conditional certification stage of an FLSA collective action. The only appellate court to address the issue so far has resolved the conflict in favor of arbitration, holding that employers cannot be ordered to send notice of a collective action to employees who agreed to resolve their disputes by individual arbitration instead. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019). This Court, by contrast, held that Facebook must give notice to such employees. Because this Court's order deepens the split among the lower courts—including within the Northern District of Illinois—on this issue of broad national importance, and because the order is unlikely to be reviewable upon final judgment, immediate appellate guidance is warranted. Accordingly, this Court should certify its order for interlocutory appeal. In the meantime, to prevent further dissipation of the benefits of arbitration—and to prevent the notice that is the subject of the proposed interlocutory appeal from becoming a fait accompli—this Court should stay its order pending appeal.

## ARGUMENT

I. **FACEBOOK'S MOTION RAISES A SIGNIFICANT ISSUE OF NATIONWIDE IMPORTANCE REGARDING THE ENFORCEABILITY OF ARBITRATION AGREEMENTS.**

　　A. **Courts Have Consistently Recognized The Strong Federal Policy Favoring Enforcement Of Arbitration Agreements.**

For decades, Congress and the Supreme Court have recognized the paramount importance of enforcing arbitration agreements. Congress enacted the FAA (9 U.S.C. § 1 *et*

*seq.*) in 1925 in response to—and as a forceful rejection of—a history of judicial hostility toward arbitration agreements and refusal to enforce such agreements. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 n.4 (1974); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (FAA was intended to "reverse the longstanding judicial hostility to arbitration agreements"); *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984) (recounting Congress's observation that hostility of courts to arbitration gave rise to the need for the FAA). Congress recognized that "arbitration had more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp.*, 138 S. Ct. at 1621; *see also Scherk*, 417 U.S. at 510-11 (Congress enacted the FAA to enable parties to "avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts.'" (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

The FAA adopted "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Southland*, 465 U.S. at 10 ("In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration . . . ."). Section 2 of the Act provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In accordance with Congress's legislative judgment, the Supreme Court has repeatedly reaffirmed the critical importance of respecting arbitration agreements. It has directed courts to "rigorously enforce arbitration agreements according to their terms, including . . . the rules under which that arbitration will be conducted." *Italian Colors*, 570 U.S. at 233 (internal quotation marks and citations omitted). In particular, the Supreme Court has rejected rules that would

3

"frustrate[]" arbitration's objective of achieving "streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357-358 (2008). While other federal statutes containing a "contrary congressional command" can override the FAA's mandate that arbitration agreements be enforced according to their terms (*CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 103 (2012) (internal quotation marks omitted)), Congress's intent to do so must be "clear and manifest." *Epic Sys. Corp.*, 138 S. Ct. at 1624.

An integral part of enforcing arbitration agreements is protecting from interference the "fundamental attribute of arbitration": its "individualized and informal nature." *Id.* at 1622-23. In particular, the Supreme Court has recognized that collective and class-wide proceedings are inherently at odds with this aspect of arbitration. Such proceedings are by definition not individualized, and are "slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 563 U.S. at 347-348. Accordingly, the Supreme Court has repeatedly rejected efforts of "part[ies] in arbitration to demand classwide proceedings" (*Epic Sys. Corp.*, 138 S. Ct. at 1623) or to "invalidate arbitration agreements on the ground that they do not permit class arbitration" or class proceedings in court. *Italian Colors*, 570 U.S. at 232. *See also Imburgia*, 136 S. Ct. at 471 (holding that state courts must enforce arbitration agreements containing class waivers); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (courts must "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation"). The Supreme Court has applied the same principles in the collective action context, holding last year that the National Labor Relations Act did not displace the FAA and provide a basis for refusing to enforce arbitration agreements waiving collective action and class action procedures. *Epic Sys. Corp.*, 138 S. Ct. at 1632. As the Supreme Court put it, the FAA "seems to protect

4

pretty absolutely" arbitration agreements that require "individualized rather than class or collective action procedures." *Id.* at 1621.

      **B.**      **Requiring Companies To Give Notice Of A Class Action To Employees Who Are Parties To Arbitration Agreements Undermines The Federal Policy Favoring Enforcement Of Arbitration Agreements.**

As this Court recognized, its order directing Facebook to provide notice of the pending FLSA collective action to employees who agreed to individualized arbitration—and allowing those employees to "opt in" to the class, at least until the end of discovery—is in "conflict" with the above-described "'liberal federal policy favoring arbitration agreements.'" Op. at 29 (quoting *Epic Sys. Corp.*, 138 S. Ct. at 1621). Requiring employers to give notice of a collective action to such employees undermines arbitration's fundamentally individualized, informal nature. It permits employees who have *waived* the ability to be part of a collective action to nonetheless opt into a collective action.

Although this Court's order leaves open the possibility that Facebook could subsequently move to decertify or exclude from the collective action those employees who are parties to arbitration agreements, that opportunity will not arise until later in the proceedings. In the meantime, those employees will be entitled to participate in the collective action—a procedural mechanism that "lacks" and "interferes with" arbitration's benefits (*Concepcion*, 563 U.S. at 344, 351) in multiple ways.

Rather than "swiftly proceeding to arbitration, as federal law contemplates," *ChampionsWorld, LLC v. U.S. Soccer Fed'n*, 2007 WL 2198366, at *4 (N.D. Ill. July 31, 2007), an employer must first give employees who are parties to arbitration agreements notice of the pending FLSA action and afford them an opportunity to opt in to the collective action despite their clear contractual agreement to the contrary. Only after that expense and delay can the employer litigate the enforceability of the arbitration agreements.

5

Second, requiring employers to give notice of a pending FLSA collective action to employees who are parties to arbitration agreements—and permitting those employees to opt in to the class, even temporarily—"hinder[s] the speedy resolution of the controversy." *Concepcion*, 563 U.S. at 346. The notice requirement thus imposes significant burdens on employers that would be avoided under an arbitration agreement. For example, employers will have to engage in more costly group discovery.

These costs and burdens are multiplied by the fact that the notice will likely encourage many employees to opt in to the litigation who would not have done so in contravention of their agreements if they had not been subject to a notice that (inaccurately) suggests that it is proper for them to do so. Employees who otherwise would have honored their arbitration agreements may be confused by a court-sponsored notice into believing that they can, and should, join the collective action when in fact they are unable to do so and (at best) will waste their time and delay their ability to pursue their own claim in arbitration. Facebook (and any other employer required to do the same) will then be required to expend resources and time that it ordinarily would not have had to spend to compel arbitration of these employees' claims (or to decertify the action).

Furthermore, the notice requirement increases the pressure on employers to settle even questionable claims. The evidence here is that almost *80%* of the employees who are covered by the conditionally certified collective action agreed to individual arbitration. In other words, the conditionally certified collective is five times larger than it should be, thereby substantially ratcheting up the stakes for companies like Facebook. Because the damages potentially owed might be aggregated and decided at once in a collective action, the quintupling of the collective size drastically increases the potential damages at stake in the action. And as the Seventh Circuit

6

has explained, even the "small probability of an immense judgment" puts "intense pressure to settle" on defendants. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995).

Accordingly, this Court's order deprives Facebook—and its employees—of many of the benefits and advantages of arbitration. And it does so in the absence of any "clear and manifest" congressional command "evinc[ing] an intention to preclude a waiver of class-action procedure." *Italian Colors*, 570 U.S. at 234 (internal quotation marks and alteration omitted); *see also Epic Sys. Corp.*, 138 S. Ct. at 1624. The FLSA merely provides that an employee may maintain an action against an employee on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). While the Supreme Court has stated that district courts have "discretion" to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs (*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)), that is not anything close to a *command* to override arbitration agreements, much less a *congressional* command or a clear and manifest command. *Cf. Epic Sys. Corp.*, 138 S. Ct. at 1617 (noting that the employees "do not suggest that the FLSA displaces the [FAA], presumably because the Court has held that an identical collective action scheme does not prohibit individualized arbitration proceedings") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991)).

## II. THERE IS A PRESSING NEED FOR APPELLATE GUIDANCE.

Given the important interests and policies at stake, the need for appellate guidance from the Seventh Circuit is pressing. To date, the only appellate court to address this issue reached the opposite conclusion from this Court. In *In re JPMorgan Chase & Co.*, the Fifth Circuit held that district courts do not have discretion to require notice of a pending FLSA collective action to employees who are parties to binding arbitration agreements. 916 F.3d at 504.

But the issue arises with great frequency: there have been over 200 district court opinions addressing it. *See id.* at 499 n.5. That number is rising at an ever-increasing rate. *See id.* And

7

as this Court recognized, the courts that have addressed the issue have split. Op. at 30. Some courts—including another court in this District—have agreed with the Fifth Circuit that courts cannot require notice of a pending FLSA collective action to employees who are parties to binding arbitration agreements. *See, e.g., Hudgins v. Total Quality Logistics, LLC*, 2017 WL 514191, at *4 (N.D. Ill. Feb. 8, 2017); *Agarunova v. Stella Orton Home Care Agency, Inc.*, 2019 WL 1114897, at *3 (E.D.N.Y. Mar. 11, 2019). Others have permitted notice to be sent to employees who were precluded from joining a collective action due to binding arbitration agreements. *See, e.g., Montero v. JPMorgan Chase & Co.*, 2017 WL 1425611, at *7 (N.D. Ill. Mar. 22, 2017); *Amrhein v. Regency Mgmt. Servs., LLC*, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014). Notably, many of the cases in the latter category were decided prior to the Supreme Court's decision in *Epic Systems*, which, as noted above, reversed the lower court's refusal to enforce arbitration agreements waiving collective action and class action procedures where the relevant statutory provisions did not embody a "clear and manifest" congressional intent to displace the FAA. 138 S. Ct. at 1624.

As evidenced by the number of cases raising this issue, this is an issue that is of significant importance not just to the parties in this case, but to numerous other employers— including many Chamber members. Accordingly, resolution of this unsettled area of the law will aid many others as well. *See, e.g., Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) ("The opportunity to achieve appellate resolution of an issue important to other similarly situated [parties] can provide an additional reason for certification."); *Su v. Siemens Indus.*, 2014 WL 2600539 (N.D. Cal. June 10, 2014) (noting that questions sought to be certified "are of substantial public policy importance to the state as a whole").

Finally, interlocutory review is especially important here because as a practical matter, the issue likely will not be reviewable at the end of the case. A court may ultimately exclude from the collective action those employees who are bound by arbitration agreements, thereby mooting the issue; or, as is often the case, the collective action may have settled by then (but on terms that may take into account the employees with arbitration agreements who were provided notice). *JPMorgan Chase & Co.*, 916 F.3d at 499 (observing that the notice issue is "irremediable on ordinary appeal"). Accordingly, the split in authority can *only* be settled through an interlocutory appeal.

In light of the broad significance of the issue, the deepening split between the courts, and the Supreme Court's recent guidance in its *Epic Systems* decision, the time is ripe for the Seventh Circuit to weigh in.

## III. THIS COURT SHOULD GRANT A STAY PENDING APPEAL.

To ensure that Facebook has a meaningful opportunity to raise this important issue on appeal, this Court should stay its notice order pending a ruling by the court of appeals. Absent a stay, Facebook will lose the benefits of the arbitration for which it contracted. Indeed, notice will likely go out to the employees with arbitration agreements before the appeal is decided—undermining the very purpose of the appeal that Facebook seeks to file. That type of harm is "truly irremediable on ordinary appeal"; as the Fifth Circuit explained in the same context, the defendant would "have no remedy after a final judgment because the notice issue will be moot once [the defendant] has provided the required contact information and notice has been sent to putative collective members." *In re JPMorgan Chase & Co.*, 916 F.3d at 499 (quotation marks and citation omitted). And Facebook will then be forced to begin litigating in court with any of those employees who opt in to the collective action—precisely what the arbitration agreement precludes.

9

Courts—including the Seventh Circuit—have recognized that such a potential dissipation of arbitration's benefits warrants a stay pending appeal. For example, the Seventh Circuit has held that district court proceedings are automatically stayed pending appeals of orders denying motions to compel arbitration. *See Bradford-Scott Data Corp. Inc. v. Physician Computer Network Inc.,* 128 F.3d 504, 505-06 (7th Cir. 1997). The court noted that the cost and speed benefits of arbitration are "eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially." The party seeking to enforce an arbitration agreement would find itself between Scylla and Charybdis: either it could forego an appeal and be forced to litigate in court, or it could pursue an appeal at the risk of *multiplying* its costs and delays: "The worst possible outcome would be to litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to arbitrate the dispute, and finally return to court to have the award enforced." *Id.* at 506; *Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613 (1st Cir.1959) (ordering stay of trial court proceedings pending appeal of order staying arbitration because "a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate").

That reasoning is equally applicable here. Denying Facebook a stay pending appeal would only exacerbate the interference with Facebook's arbitration rights, which it seeks to vindicate on appeal.

## CONCLUSION

This Court should grant Facebook's motion for certification of an interlocutory appeal pursuant to § 1292(b) and grant a stay of the order while Facebook seeks relief in the Seventh Court.

| | |
|---|---|
| Date: April 8, 2019 | By: /s/ *Lauren R. Goldman* |
| | Lauren R. Goldman<br>Karen W. Lin (*pro hac vice application forthcoming*)<br>MAYER BROWN LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 506-2500<br>lrgoldman@mayerbrown.com<br>klin@mayerbrown.com |
| | Archis A. Parasharami<br>Andrew J. Pincus (*pro hac vice application forthcoming*)<br>MAYER BROWN LLP<br>1999 K Street, NW<br>Washington, DC 20006-1101<br>Telephone: (202) 263-3000<br>aparasharami@mayerbrown.com<br>apincus@mayerbrown.com |
| | Michael A. Scodro<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, Illinois 60606<br>(312) 782-0600<br>mscodro@mayerbrown.com |
| | *Counsel for Amicus Curiae the Chamber of Commerce* |